UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

OUNDRA STANLEY, MALCOM
MOULTON, CHARLES HUNTER,
BETTY COMPTON, MARCIA BROWN,
TANSLEY ANN CLARKSTON, individually
and on behalf of all others similarly situated,

       Plaintiffs,

v.                                    Case No. 04-74654

UNITED STATES STEEL COMPANY,         HONORABLE AVERN COHN

       Defendant.

_____/

**DECISION AND ORDER CERTIFYING CASE AS A CLASS ACTION.**

**I.  INTRODUCTION.**

**A.**

This is an environmental air pollution case brought by residents of the cities of

Ecorse and River Rouge.[1]  Plaintiffs claim that emissions from Defendant U.S. Steel

Company's mill contain particulate matter from the steel-making process that settles on

their property creating a nuisance and causing property damage.  The claims are set

forth in the Second Amended Master Class Action Complaint.

Jurisdiction is predicated on diversity of citizenship.  28 U.S.C. § 1332.  Before

_____

[1] Residents of Ecorse and River Rouge initially filed separate law suits.  The City
of River Rouge filed a separate law suit, and the City of Ecorse was a plaintiff in the law
suit filed by its residents.  The Court consolidated the cases in an Order of
Consolidation and Pretrial Order on April 21, 2005.  The Second Amended Order of
Consolidation, entered on January 18, 2006, required the cities' cases to separate from
the individuals' claims.  This decision affects only the claims of the individual plaintiffs.

the Court is plaintiffs' motion for class certification as to: Count 1, violation of the

Michigan Natural Resources and Environmental Protection Act; Count II, negligence;

and, Count III, private nuisance.  The motion for class certification is brought under Fed.

R. Civ. P. 23(a) and (b)(3).

The Court held a hearing on class certification in November, 2005.  At the

hearing, the Court engaged in analysis of class certification requirements, ordered

plaintiffs to file a consolidated complaint and asked the parties to propose an order

granting class certification.  Plaintiffs complied the Court's requests.  Before the Court is

plaintiffs' Motion for Entry of Opinion and Order Certifying Case as Class Action.  U.S.

Steel opposes class certification primarily on the grounds that common issues of fact

and law do not exist or predominate the case.

For the reasons that follow the motion will be granted and a class is certified on

the limited question of liability.  Class certification is deferred on the question of

damages to each of the class members as individual facts likely impact damages if

plaintiffs' liability claim prevails.

## II. FACTUAL ALLEGATIONS.

The following facts are alleged.  On or about May 20, 2003, U.S. Steel purchased

the Great Lakes Works steel mill from the bankrupt National Steel Corporation (NSC).

U.S. Steel acquired NSC's permits to operate the steel mill.  The steel mill

encompasses approximately 1,100 acres in Ecorse and River Rouge, and contains steel

making and finishing facilities producing steel products primarily used in the automotive

industry.  The steel-making process produces many pollutants, including manganese,

benzene, chromium.  Particulate material called "kish" also results from the

2

manufacturing process.

The steel mill did not meet state and federal environmental emissions and pollution standards in the last years of NSC's ownership.  After U.S. Steel acquired the steel mill, the Michigan Department of Environmental Quality (M.D.E.Q.) issued six letters of violation against U.S. Steel, and the U.S. Environmental Protection Agency (E.P.A.) placed the steel mill on its High Priority Violators List.  Ambient air sampling and testing, both by government agencies and plaintiffs, indicate air pollution and particular matter in the air.

The steel mill failed government tests despite U.S. Steel's efforts to improve the mill's conditions.  Since March 1, 2005, U.S. Steel has operated the steel mill under a Renewable Operating Permit issued by the M.D.E.Q.  To satisfy the M.D.E.Q.'s concerns, U.S. Steel entered into a Consent Decree with the M.D.E.Q.   The Consent Decree includes bench-marks for reductions in steel mill emissions and clean up.

Since U.S. Steel began operating the steel mill, plaintiffs allege they have endured many harms.  Plaintiffs report dust, debris and graphite falling from the sky from the steel mill.  Plaintiffs also find kish on their home or in their furnace filters.  Plaintiffs say their homes, driveways, cars, patio furniture and children's toys are frequently blanketed by "fallout" from the steel mill, and others note they must keep their windows closed to avoid debris, and have to wash their home each week.  Plaintiffs say the harm from pollution generated by the steel mill constitutes a nuisance, negligence, and a violation of the Michigan Natural Resources and Environmental Protection Act, M.C.L. § 324.101 *et seq.*

### III.  CLASS DEFINITION.

### A.

Plaintiffs propose the following class definition:

All natural persons residing within the geographical boundaries of the cities of River Rouge or Ecorse anytime after May 20, 2003.

Excluded from the class are: (1) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and Defendant's legal representatives, predecessors, successors, and assigns; (2) the judicial officers to whom this case is assigned; and (3) any member of the immediate family of excluded persons.

### B.

U.S. Steel objects to the class definition.  U.S. Steel says the proposed definition lacks: (a) a property ownership requirement; (b) a single family residency requirement; and (c) a continuous residency requirement.  U.S. Steel says this class definition would include infants who lived in Ecorse or River Rouge for just one day, even though the suit is about damage to real and personal property.  Additionally, U.S. Steel says additional exclusions must be added.  U.S. Steel says all managers or supervisors at the steel mill should be excluded, as any discussions with them would be ex parte communications and a violation of the attorney-client privilege.  U.S. Steel requests additional briefing on this issue.  Additional briefing is not necessary.

### C.

Considering U.S. Steel's objections, the Court defines the class as follows:

All persons natural and corporate owning real and/or personal property within the geographic boundary of the cities of River Rouge and Ecorse anytime after May 20, 2003.

Excluded from the class are: (1) Defendant, any entity in which Defendant has a controlling interest or which has a controlling interest in Defendant, and

4

Defendant's legal representatives, predecessors, successors, and assigns; (2) the judicial officers to whom this case is assigned; (3) all managers and supervisors at the steel mill; (4) government entities; and (5) any member of the immediate family of excluded persons.[2]

This definition requires property ownership, and includes owners of homes, businesses, and multi-unit dwellings, as well as people who rent residences and suffer harm from emissions that damage their personal property. There is no requirement of continuous ownership of property in the two cities, as damages could arise after a small duration of time. A temporal requirement may be required if there is liability and the case proceeds to a damages phase. The parties have 10 days to file objections to the Court's proposed class definition.[3]

## IV.  CLASS ACTION MOTION.

### A.  Class Action Motion Requirements: Fed. R. Civ. P. 23.

Fed. R. Civ. P. 23 reads in part:

(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

   (3) the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters

---

[2] A draft of the Court's proposed order is attached.

[3] The Court encourages U.S. Steel to offer a timely response to the proposed definition. U.S. Steel's pattern of objecting, in lieu of offering alternative language, is not helpful.

pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

"A court has broad discretion in deciding whether to allow the maintenance of a class action." 7AA CHARLES A. WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE §1785 at 370 (2005). Certification may be reversed, altered, or amended as the case progresses. 7AA WRIGHT § 1785.4 at 471. The party seeking class certification has the burden of showing that all of the requirements have been met. 7A WRIGHT § 1759 at 122.

## B.  Discussion: Fed. R. Civ. P. 23(a) (Prerequisites).

### 1.  Numerosity.

There are more than 20,000 residents in an aggregated Ecorse and River Rouge. About 1,000 Ecorse residents completed a survey stating pollution and/or particulate matter harms their property. Based on the representation that about 1,000 residents have expressed an interest in the case and, presumably, allege an injury, the class is sufficiently numerous to make joinder impracticable. See Smith v. Gen. Motors. Corp., 14 Fair Empl. Prac. Cas. (BNA) 987, *5 (E.D. Mich. 1977) (stating that thirty-five is often the standard).

### 2. Commonality.

There must be questions of law or fact in common, not necessarily both, among class members. Ballan v. Upjohn Co., 159 F.R.D. 473 (W.D. Mich. 1994). In Plaintiffs' Second Amended Master Class Action Complaint, plaintiffs allege several common

6

questions of law and fact, including, <u>inter alia</u>:

> (1) whether U.S. Steel's operations have violated applicable air pollution standards, limits, permits or other laws;

> (2) whether U.S. Steel has been negligent in its operation and emissions;

> (3) whether the air pollution condition created by U.S. Steel constitutes a nuisance under Michigan nuisance law;

> (4) whether U.S. Steel was the source of the air pollution found in plaintiffs' environment.

U.S. Steel disputes the existence of common questions of law and fact. U.S. Steel argues that there is not a single source of pollution in Ecorse and River Rouge. U.S. Steel says there is no evidence of causation for the entire class, as some of the prospective plaintiffs were not impacted by the steel mill, meaning no common questions of law and fact dictate liability to each prospective plaintiff. U.S. Steel proffers affidavits from two experts to rebut plaintiffs' assertion of commonality.

A review of the facts and the legal rights of each of the individual plaintiff's reveals multiple common issues of law and fact. A nuisance action requires proof of the quantity and content of the alleged offender's emitted pollutants. Whether U.S. Steel was negligent in operating the steel mill by emitting pollutants in violation of state and/or federal law is a basis for liability. Whether U.S. Steel's emissions fall in Ecorse or River Rouge is a fact integral to each plaintiff's case. Each class member must establish these facts, and establishing them would materially advance the litigation. As such, there are common questions of law or fact in the case.[4]

---

[4]Individual questions of fact predominate the question of damages for each class member, thus, class certification is granted on the issue of liability only. <u>See</u> <u>Sterling v. Vesicol Chem. Corp.</u>, 855 F.2d 1188, 1197 (6th Cir. 1988) (damages may be reserved for individual consideration after liability to the class is determined).

7

### 3. Typicality.

The purpose of the typicality requirement is to assure that the named representatives' interests align with those of the class.  In re Amer. Med. Sys., Inc., 75 F.3d 1069, 1082 (6th Cir. 1996).  The inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action."  Van Vels v. Premier Athletic Center of Plainfield, Inc., 182 F.R.D. 500, 510 (W.D. Mich. 1998).  "The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class."  Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998).

Plaintiffs assert that the class representatives and the potential class members have the same complaint and have to prove that the steel mill emits excessive particulate matter and kish, which substantially interferes with their use and enjoyment of their property.  Plaintiffs say all class members live in the same geographic area. The only difference, plaintiffs say, would be the extent to which each member of the class has suffered from the emissions.

U.S. Steel says extreme variations in proximate causation and damages among the plaintiffs suggests that the class representatives and class members have varied interests.  U.S. Steel argues that each plaintiff's claim depends on individual facts due to the unique nature of air pollution, meaning the typicality requirement is not met.

The typicality requirement is met because the class certified for decision is limited to U.S. Steel's liability, not whether U.S. Steel caused harm to a particular putative class member or the amount damages a putative class member may recover. If, after resolution of liability, there is a determination that the steel mill's emissions

harmed only some putative class members' property, only those plaintiffs can recover.

### 4.  Adequacy.

The adequacy of class representation is measured by (1) the qualifications of the named plaintiffs' attorneys and (2) the extent to which plaintiffs' interests may be antagonistic to those of the class.  <u>Senter v. Gen. Motors Corp.</u>, 532 F.2d 511, 524-25 (6th Cir. 1976).  Here, there is no challenge to the qualification of plaintiffs' attorneys.

U.S. Steel only challenges Charles Hunter (Hunter) as an inadequate class representative.  U.S. Steel notes that, in his deposition, Hunter said he did not bother to read the complaint before it was filed, and, upon reading it, noticed that his address was incorrect as stated on the complaint.  Additionally, U.S. Steel notes that Hunter either did not know, understand, or was confused about the relief sought in the case.  U.S. Steel says Hunter is not familiar enough with, or interested in, the conditions he seeks to challenge on behalf of the class.

U.S. Steel's challenge is limited to one of the representative plaintiffs.  Therefore, despite the oversights reflected in Hunter's deposition testimony, the representative plaintiffs appear at this time to adequately represent the interest of the proposed classes.  Accordingly, the named representatives and class counsel are adequate.

### C.  Discussion: Fed. R. Civ. P. 23(b) (Maintainability).

### 1.  Predominance and Superiority.

### a.

U.S. Steel argues that individual questions of law and fact predominate, precluding class certification.  "An analysis of the predominance of individual claims begins with the elements of the alleged claim for relief, and requires an examination of

the proof required to substantiate plaintiffs' allegations." <u>Weil v. Long Island Sav. Bank</u>, 200 F.R.D. 164, 174 (E.D.N.Y. 2001) (internal quotations and citations omitted).  The defenses raised may also create individual questions of fact or law that predominate over common questions of fact or law, thereby precluding class certification.  <u>See</u> <u>In re Am. Med. Sys, Inc.</u>, 75 F.3d 1069.  The question of whether individual or common questions of law and fact predominate must therefore be determined by looking at both the plaintiffs' and the defendant's case.  The predominance inquiry also examines whether class certification is a superior method for managing the case.

The four factors listed in Fed. R. Civ. P. 23(b)(3) as pertinent to a finding of predominance and superiority are: (1) the interest of the class members in individually controlling the litigation; (2) the extent and nature of any ongoing litigation of the matter; (3) the desirability of the particular forum; and (4) the difficulties likely to be encountered in managing the action.

Here, the class members do not have any great interest in individually controlling the litigation and have a much greater interest in ensuring class certification, as each member's individual claim is likely too small to make an individual suit worthwhile.  The parties have not brought to the attention of the Court any other like case, so there is no indication that this case would interfere with any other case.  All plaintiffs and the accused steel mill are located in this jurisdiction, thus there is no reason to find this forum undesirable.

The fourth factor requires greater consideration.  U.S. Steel does not see class certification as a superior method of handling the claims.  U.S. Steel says the plaintiffs continue to treat this case as a single actor, single course of conduct case.  <u>LaBauve v.</u>

10

Olin Corp., 231 F.R.D. 632 (S.D. Ala. 2005) (rejecting class certification where multiple possible polluters existed and individual determinations were integral to each plaintiff's damages).  U.S. Steel says it is not a single actor case, as the steel mill is not the only possible source of the complained of pollution in this heavily industrialized area.  As a multi-source case, U.S. Steel says common issues do not predominate.  Also, U.S. Steel says numerous difficulties will be encountered in managing the case because many individual issues will arise in considering whether the steel mill caused any harm to each plaintiffs' real or personal property.  U.S. Steel predicts that, absent class certification, plaintiffs' counsel will hire one expert, file one joint discovery request, and request consolidation of the individual cases for pre-trial and status conference purposes, thus gaining certain efficiencies without losing the ability to consider the individual claims of each plaintiff.

**b.**

By bifurcating the case, thus considering U.S. Steel's liability to the class separately from the amount of damages suffered by each putative class member, common issues of law and fact do predominate, and class certification is a superior method of managing the case.  Common issues predominate in air pollution cases when the paramount issue concerns whether a plant's emissions are substantially interfering with the local residents' use and enjoyment of their real and personal property.[5]  Plaintiffs say they all have suffered from the steel mill's pollution and suffered

---

[5] U.S. Steel's assertion that it is not the sole polluter in the heavily industrialized area at issue in this case does not mean it is not liable for tortuous conduct.  Under Michigan law the jury apportions third-party or non-party liability, and could reduce U.S. Steel's liability accordingly. See M.C.L. § 600.2957.  Also, U.S. Steel does not assert

the same type of damages.  Cook v. Rockwell Int'l Grubb, 151 F.R.D. 378 (D. Colo. 1993) (certifying a class of property owners seeking damages for the defendant's discharge of radioactive and non-radioactive substances into the surrounding area).

As discussed, supra, individual damages can be determined after adjudicating the central issue of U.S. Steel's liability.  See Sterling v. Veliscol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988) ("where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct..., a class action may be the best suited vehicle to resolve such a controversy").  Deciding liability will consume the vast majority of the time, evidence and witness presentation.  Also, air testing and pollution data, pollution experts, steel-making modeling, and M.D.E.Q. witnesses and documents will be utilized for each of the putative class members, thus common issues predominate over any individual issues that exist.

As the Court observed at the November, 2005, hearing, denying class certification would result in hundreds of individual cases being filed, with the same claims, and asserting the same cause and nature of damages to their property.  Then the cases would be consolidated for trial on liability.  Granting class certification prevents this bureaucratic exercise.  Though an individual determination of damages for each plaintiff will be necessary, this does not overcome the common issues that

---

that another steel mill or facility emitting the same pollutants and particulate matter exists in or around Ecorse and River Rouge.  The source of pollutants is often traceable.  See Barry J. Goehler, *Control of Mercury Emissions from Coal-Fired Electric Power Plants*, 9 ENVTL. LAW. 119, 124-26 (2002) (discussing the ability to distinguish the type and source of mercury in the air); and *U.S. Environmental Protection Agency: Technology Transfer Network Clearinghouse for Inventories and Emissions Factors*, *available at* www.epa.gov/ttnchie1/emch/speciation/index.html (discussing the use of "speciation" to determine the origin of pollutants).  The M.D.E.Q. and the E.P.A. agree that pollutants are traceable to the steel mill.

predominate on liability in the case.  It seems clear that class certification would provide a simpler mechanism for handling the many logistical issues that would arise were the claims heard individually.

## V.  CONCLUSION.

Going forward, the Court can amend the class definition or decertify the class. "This power to change the class certification decision has encouraged many courts to be quite liberal in certifying a class when that decision is made at an early stage, noting that the action always can be decertified or the class description altered if later events suggest that it is appropriate to do so."  Cook v. Rockwell Int'l. Corp., 151 F.R.D. 378, 381 (D.Colo.1993).[6]

The parties have 10 days to object to the attached order.  The motion to certify the class is GRANTED on the issue of U.S. Steel's liability.

SO ORDERED.


Dated:  February 27, 2006           s/Avern Cohn_____
                                    AVERN COHN
                                    UNITED STATES DISTRICT JUDGE



I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, February 27, 2006, by electronic and/or ordinary mail.

                                     s/Julie Owens_____
                                    Case Manager
                                    (313) 234-5160


---

[6] The jury in the Rockwell case awarded the plaintiffs $554 million in total damages on February 15, 2006.  See Alicia Caldwell, *Flats plaintiffs due $554 million*, DENVER POST, February 15, 2006 *available at* www.denverpost.com/news/ci_3510283.